# IN THE COURT OF APPEALS OF IOWA

No. 16-1879
Filed August 2, 2017

**IN THE INTEREST OF K.B.,**
**Minor Child,**

**A.L., Mother,**
　　　Petitioner-Appellant,

**K.B., Father,**
　　　Respondent-Appellee.
_____

　　　Appeal from the Iowa District Court for Story County, Stephen A. Owen, District Associate Judge.


　　　A mother appeals the dismissal of her petition to terminate the parental rights of a child's father under Iowa Code chapter 600A (2016).  **AFFIRMED.**


　　　Dorothy L. Dakin of Kruse & Dakin, L.L.P., Boone, for appellant mother.

　　　Andrea M. Flanagan of Sporer & Flanagan, P.L.L.C., Des Moines, for appellee father.


　　　Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**VAITHESWARAN, Presiding Judge.**

A mother appeals the dismissal of her petition to terminate the parental rights of a child's father.

## I. Background Facts and Proceedings

Kelly Beaman and Ashley Lindstrom married in 2006 and divorced in 2008. They are the parents of a child born in 2005. Under the dissolution decree, Lindstrom received sole legal custody and physical care of the child. The decree stated, Beaman "shall be awarded reasonable visitation as the parties may agree" and "[i]f the parties are unable to agree, visitation shall be" pursuant to a prescribed schedule.[1] Beaman was ordered to pay $200 per month in child support beginning July 1, 2008, and furnish health insurance for the child "provided it [was] available through his employment at a reasonable cost."

Following entry of the decree, Beaman exercised overnight, unsupervised visitation with the child. During one of the visits, hot cocoa spilled on the child's pelvic area and burned her. The child was diagnosed with second-degree burns and the matter was referred to the department of human services for investigation. According to Lindstrom, the department issued a "founded" child abuse report against Beaman for failure to provide "proper care" but declined to place him on the child abuse registry.

Beaman's visits with the child ended for several years. Beaman blamed Lindstrom, testifying she said he would "never see" the child again. Lindstrom, in

---

[1] The schedule granted Beaman visitation "every other weekend . . . from Friday at 3:00 p.m. until the following Sunday at 5:00 p.m.," and two weeks out of the summer, "one week in June and one week in July."

contrast, stated Beaman "wanted supervised" visitation, but "he never followed through with it." Lindstrom did not seek a modification of the dissolution decree's visitation provisions, and Beaman made no immediate effort to enforce his rights under the decree.

In 2014, Beaman's soon-to-be wife contacted Lindstrom about recommencing visits. Lindstrom denied the request. She also rejected Beaman's subsequent offer to have the child added to his family's health insurance policy.

In early 2016, Beaman's wife again asked Lindstrom if they could see the child. Lindstrom again denied the request. Beaman sought to resolve the issue informally, through counsel. Lindstrom responded with a termination petition, alleging Beaman abandoned the child. When Beaman was unable to resolve the matter informally, he filed an application for rule to show cause.[2]

Following a termination hearing, the district court denied Lindstrom's petition. Lindstrom appealed.

## II. Abandonment

Lindstrom's termination petition was filed pursuant to Iowa Code chapter 600A (2016), which provides the following definition of abandonment:

> "To abandon a minor child" means that a parent, putative father, custodian, or guardian rejects the duties imposed by the parent-child relationship, guardianship, or custodianship, which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child.

---

[2] It should be noted that, although Lindstrom filed her termination petition prior to the filing of Beaman's application for rule to show cause, service of the petition did not occur until well after Beaman filed his application.

Iowa Code § 600A.2(19).  The statute further lists abandonment as a ground for termination.  *See id.* § 600A.8(3).  For a child six months of age or older at the time of the termination hearing,

> [A] parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
> > (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> > (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
> > (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

*Id.* § 600A.8(3)(b).  Lindstrom argues Beaman (A) "failed to contribute support for [the child] in a reasonable amount according to his means," (B) "did not visit [the child] monthly while able" and "she did not prevent him from doing so over a period of seven years," and (C) "did not maintain regular communication with her or [with the child]."  On our de novo review, we disagree with these assertions.

### A.    Support

To prove abandonment, Lindstrom was required to establish Beaman failed to maintain "substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to [his] means."  *Id.*  The district court found Beaman paid $12,467.58 of his support obligation of "slightly less than $20,000" and "overpaid"

from 2013 forward. The court determined he "maintained repeated contact with the child through payment of a reasonable amount of support for the child." The court noted Beaman was "also supporting the child reasonably by providing health insurance," notwithstanding Lindstrom's efforts "to excuse him from doing so." The court concluded Lindstrom "ha[d] not established clearly and convincingly that [Beaman] has abandoned the child by failing to maintain substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child."

The record supports the court's findings. Beaman recognized his financial obligation to the child and made efforts to meet that obligation. Although there came a time when he had the means to pay off the arrearage but failed to do so, he consistently paid extra to reduce the arrearage and stated he could "get the money" to eliminate it. We agree with the district court that Beaman contributed to the support of the child.

### B. Visitation or Regular Communication

Lindstrom was also required to prove Beaman failed to maintain "substantial and continuous or repeated contact with the child as demonstrated by" either (1) "[v]isiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child" or (2) "[r]egular communication with the child or with the person having the care or custody of the child, . . . when prevented from visiting the child by the person having lawful custody of the child." *See id.*

The district court found Lindstrom "denied visitation on a consistent basis" after the burn incident. The court rejected Lindstrom's reasons for the denials.

Lindstrom's reliance on the advice of the child's counselor, the court said, was incongruous because the counselor was providing the child therapy for issues unrelated to contact with her father. Similarly, Lindstrom's claimed inability to make contact with Beaman was met with skepticism. Finally, the court stated Lindstrom's reliance on the child's alleged preference to have no contact with her father was "likely the product of [Lindstrom's] concerted and intentional effort to alienate the child from" Beaman.

These findings are fully supported by the record. Lindstrom did not call the child's therapist to testify but it became evident from her own testimony that the child's therapy addressed two significant traumas in the child's life, one of which Lindstrom chose not to disclose to Beaman. As for Lindstrom's claimed inability to communicate with Beaman, text messages belie this assertion. The record is also replete with evidence of Lindstrom's efforts to alienate the child from her father such as the child's statement to the guardian ad litem that her mother gave her a "paper" listing the negative "things her father had done," including "episodes of domestic abuse."

No one, including Beaman, condoned his conduct towards Lindstrom before the dissolution or the burn incident after the dissolution. But if Lindstrom truly believed the child was at risk in his care, her remedy was to seek a modification of the dissolution decree's visitation provisions instead of unilaterally curtailing the child's relationship with her father.[3]

---

[3] Although this court has affirmed the denial of visitation in extreme circumstances where a parent is granted sole custody, the dissolution decree in this case contained a mandatory visitation provision. *Cf. In re Marriage of T.A.F.*, No. 02-0996, 2003 WL 190783, at *2-3 (Iowa Ct. App. Jan. 29, 2003).

We affirm the district court's denial of Lindstrom's termination petition. Having concluded Lindstrom failed to meet her statutory burden to prove abandonment, we find it unnecessary to decide whether termination was in the best interests of the child. *See In re A.V.*, No. 16-0480, 2016 WL 6637666, at *5 (Iowa Ct. App. Nov. 9, 2016).

### III.     *Consideration of Domestic Abuse*

Iowa Code section 600A.8(3)(c) provides in relevant part:

> In making a determination regarding a putative father, the court may consider the conduct of the putative father toward the child's mother during the pregnancy. Demonstration of a commitment to the child is not met by the putative father marrying the mother of the child after adoption of the child.

Lindstrom argues the court failed to consider Beaman's abusive conduct toward her while she was pregnant. We find this argument unpersuasive. First, section 600A.8(3)(c) is discretionary. Second, the court did consider the domestic abuse, finding Lindstrom was fearful of Beaman and Lindstrom's "history of surviving the abuse perpetrated on her . . . likely had a significant effect on her perception of the danger." The court simply did not find the history of domestic abuse dispositive. Finally, it is worth noting that the decretal court considered the history of domestic abuse in deciding to grant Lindstrom sole legal custody of the child.

### IV.     *Appellate Attorney Fees*

Beaman requests appellate attorney fees. He has cited no statutory authority in support of the request. Accordingly, the request is denied. *See In re L.H.*, No. 16-1653, 2017 WL 1278336, at *3 (Iowa Ct. App. Apr. 5, 2017); *In re*

*A.F.*, No. 16-0650, 2016 WL 6652390, at \*5 (Iowa Ct. App. Nov. 9, 2016); *In re B.G.S.*, No. 03-1272, 2004 WL 359528, at \*3 (Iowa Ct. App. Feb. 27, 2004).

**AFFIRMED.**